The next case is number 19-50638. I know I'm going to mispronounce your name, so I'm afraid I will. Good morning, your honor. This is Lakshmi Ramakrishnan for the appellants. Thank you. Are you ready to proceed? Yes, your honor. May it please the court. This case involves the owners of a company who concocted a scheme to secure truck drivers for their business. They obtained H-2B visas under false pretenses and then recruited employed workers from Mexico, including our clients. The workers alleged violations of the FLSA and RICO, stemming from defendant's scheme, which were dismissed by the district court. And the issue on appeal is whether the workers' complaint adequately alleged violations of the FLSA and RICO. I will start with the FLSA allegations and then move to RICO. The district court dismissed the workers' minimum wage and overtime claims under the FLSA, stating that the complaint did not adequately plead that workers were covered employees under the act, and two, that the allegations were not sufficient to put the employers on notice of their potential liability under the FLSA. Turning to coverage, the workers alleged that they were employed in an enterprise engaged in that this was interstate commerce was somehow involved. Well, they only had to show that they were in an enterprise engaged in commerce, so we allege that they had the requisite volume of business, which was $500,000, and then that they handled the trucks. They handled, sold, or otherwise worked on goods or materials in commerce, which is by handling the trucks by driving and fueling them. What's your best case of getting gasoline within the state of Texas constitutes interstate commerce? Well, the handling clause within enterprise coverage is very broad. It covers anything that has been moved in commerce by any person. Where's the evidence that what was hauled  was in commerce? Well, the enterprise coverage, anything, the trucks themselves, we allege that the trucks themselves were moved in commerce and that they transported equipment and construction equipment and other materials in their trucks. And for the handling clause, the courts have held that every enterprise in the nation doing requisite volume of business will fall within the handling clause because literally any products, supplies, equipment that are produced or shipped from outside of the state would result in enterprise coverage. So is driving the truck that was built in another state enough? Is that what you're saying? So if the truck came from Oklahoma and it came to Texas and the person drove it, then that's enough? Yes, absolutely. The trucks, the trailers, and anything that they transported that was a part of commerce would be enough. So, I mean, this is at a very initial stage. I assume you'll do discovery. And the discovery you would do is where did the trucks come from? And if they were all built in Texas, made in Texas, all the gas came from Texas plants, nothing came from anywhere else, then maybe that'd be a different outcome. But you're thinking there's enough indication that something came from outside of Texas. Yes, as I said, the handling clause covers anything. And as you say, Your Honor, there was no discovery in this case. We are just supposed to make a plausible claim. And the court is to draw all reasonable inferences from the pleadings in the plaintiff's favor in this case. Your big problem is where you injured and was it approximately caused by the violation? Yes, Your Honor. That is the issue that is addressed largely by the plaintiffs. In this court, in Allstate versus Plombek, they found approximate cause where RICO plaintiffs were foreseeable victims of a fraudulent scheme and the resulting injuries were the object of the scheme. Similarly here, the employer scheme was to secure and underpay workers. And the workers were injured by the underpayment. Not only were the harms suffered by the workers the point of the scheme, they were the harms the H-2B visa program requirements sought to prevent. In addition, the workers here are the best situated to sue. Well, let's talk about that a little bit. And obviously, we've now shifted to RICO rather than FLSA. But on the RICO claim, the question of approximate cause is whether it directly caused it. And the problem as I see it is I don't think the H-2 is so much meant to protect the immigrant, although it does protect them and that's important. It's also to protect U.S. workers. So if there are U.S. workers available, if you have a job that pays $50 an hour, you can't go out and get somebody from another country because you'll get American citizens to do it. So that's a piece of it. So the problem is if they had advertised the $20 an hour and that had been the claim, wouldn't they have gotten American citizens and therefore not been able to get immigrants anyway? The H-2B program is designed to protect workers. And so if you refer to many of the allegations in the complaint, they are directly about the kinds of commitments the employers are required to make to the workers that they bring in under the program, including the payment of wages, reimbursement for recruitment expenses, and not taking deductions from their pay. So to start, initially, I would say that the H-2B program has the effect of protecting domestic workers. But to get to your point, Judge Haynes, it is not clear from the record. It is not a fair assumption that had the employers advertised the jobs correctly, they wouldn't have been able to bring in the H-2B workers to do prevailing truck jobs. It's just not in the record. And the reality is the Department of Labor does certify H-2B prevailing truck jobs. Well, let's get to the core of that. If they had told the truth, we want $20 an hour people, and they didn't get any American workers, so they certified the H-2B, there's nothing about that that would have prevented them from doing exactly what you say they did when they offered the $13.72. They paid less. So the problem with the proximate cause is that the lie to get the visa is not the same thing as the wrongdoing that you're claiming causes harm to your client. The fraud alleged in RICO involves both this, the claims made to get to the government to get the visas, and also the things that they did when the workers were here. And the real fraud is their failure to commit to the requirements of the program. And this court in Abraham v. Singh addressed an H-2B visa fraud scheme where the case was dealing with the continuity question, whether the fraud was continuous. However, in Abraham, they said the allegations involving the scheme included not just plaintiff's recruitment, but also their treatment in the United States. And so similarly here, we can't say that they weren't injured because the assumption that they wouldn't have been injured because they wouldn't have gotten the job wholly ignores what happened to them when they were in the United States. You have to ignore, for example, that they performed hours and hours and hours of work for which they were undercompensated. That is the injury. I mean, I think that's your FLSA claim. I just think RICO, it's a little bit different because it requires this direct proximate cause. And I'm not saying, again, and I don't mean to suggest in any way that H-2B doesn't also protect the immigrants. I'm just saying that the structure is first set up to make sure that there aren't American workers available. That's all I was saying on that. But getting back to the proximate cause, it seems indirect, not direct. So how is it direct? Well, they were directly injured because of their underpayment. And the underpayment is a market-based prevailing wage rate, right? So we can't say if I was unemployed and you paid me $200 an hour and I worked and worked and worked, and then you paid me $10 an hour, we don't say, oh, that's sufficient because you were paid and you were unemployed before. You're damaged by not being compensated for your time of work. That would be an episode. But I still don't see that as a RICO violation. I'm not saying it's a good thing to say you're going to pay someone something and then pay them less. That's not the point. The point is RICO, because RICO is a really strong statute and it's designed for a certain area. And so it's not necessarily applicable to every wrongdoing somebody commits. So while I think it's definitely wrong what you said, the $100 to the 10 or 1372 to nothing, that doesn't make it a RICO violation. That's what I'm focusing on. Sure. And the FLSA claims are a floor of minimum wage rates. The prevailing wage rate is much, much higher. They're not entirely overlapping claims. And there is probably a substantial amount of the work for which we're seeking a much higher wage rate under the prevailing wages than we would under the FLSA. So that is one point. The other thing is that RICO is intended to give people civil remedies when an employer or a defendant engages in criminal conduct. It is a serious violation to commit visa fraud, one for which there's up to two years jail time on its own. So it is a serious criminal act that defendants in this case engaged in multiple times in multiple ways. And the plaintiffs in this case were directly harmed because they left their homes, they traveled to the United States, and they put in hours and hours of work, and they were severely undercompensated for that work within the H-2B program scheme. They're also the best situated to sue because although you have noted that other United States workers may have been displaced by the fraudulent scheme, or perhaps other of Blackmagic's or the defendant's competitors might have been harmed from the scheme, the thing that the United States Supreme Court really wanted to caution against was having too much attenuation in determining whether or not you are injured. And here, nearly anybody else who would be a victim of the scheme would have to start with the original injury of underpayment of workers to derive their own damages in the case. So the other issue... The issue is, let's shift back to FLSA, and you were going to address the issue of the amount and controversy. Yes. So the second point that the employers made was regarding the sufficiency of the FLSA allegations. And here, a minimum wage complaint is sufficient if it pleads facts showing in at least one work week, the plaintiff's received less than $7.25 per hour. For an overtime violation, it is sufficient to allege that in at least one work week, the plaintiff worked more than 40 hours and was not paid time and a half for those overtime hours. And we've cited numerous cases within the circuit and also in other circuits at page 39 of our brief and also at pages 16 and 17 of the reply brief. Here, the workers listed numerous allegations regarding their work and pay that should have been enough to put the employers on notice of potential liability. For example, the complaint alleges that ROA 86, paragraph 87, that sometimes the workers were not paid at all during several pay periods in which they worked 50 to 80 hours. This allegation alone puts the employer on notice of minimum wage and overtime violations in multiple work weeks. Furthermore, at ROA 85, paragraph 80, the workers alleged that they worked more than 40 hours per week in all weeks that they were employed by the defendants and regularly worked between 55 to 80 hours per week. They also alleged they weren't paid overtime hours of one and one half times the required rates for each hour that they worked above 40. That's ROA 86, paragraph 81. They also specified the date ranges they worked between July and September 2015 at ROA 82, paragraphs 51 to 53. Given the general pleading standard that the complaint need only state a claim that is plausible on its face and give the defense notice of the claim, these allegations were beyond sufficient to meet that standard. There were two other points regarding RICO. One was on open-ended continuity, which I addressed briefly in referring to Abraham versus Singh. In this case, the allegations begin in early 2015. The workers were brought in in 2015, and then in beginning of 2016, they made the exact same application seeking construction labor when they were intending to hire truck drivers. That period of the application was to go through January 2017, but we filed our lawsuit on November 29th, 2016. As this court held in similar facts in Abraham versus Singh, they found open-ended continuity when there was no reason to suppose that the systemic violation would not have continued indefinitely had the plaintiffs not filed their lawsuit. The last point on RICO that was raised by the defendants was the joint grouping of Jesse and Carmen Ramirez in allegations. I just want to point out that there are plenty of individual allegations, ROA 75, paragraph 23, where, sorry, ROA 76, paragraph 24, Jesse Ramirez knowingly presented form ATA 9142B. ROA 77, paragraph 25, Carmen Ramirez knowingly presented the form. Significantly, ROA 79, paragraph 35, Jesse Ramirez signed and swore under penalty of perjury that the forms were correct, knowing that they were not. And many of the other allegations were pleaded together, but the best inference from those allegations were that both Jesse Ramirez and Carmen Ramirez did those things, like use the mail and wire or authorize the submission of the form. So we believe that these cases, this should be upheld, and I will reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Balconian. You need to unmute. I apologize. Thank you, Chief Judge, and may it please the court. My name is Rafi Balconian for the appellees, Jesse and Carmen Ramirez. Let me quickly hit the handling point that the court began with, and then I'll move on to RICO. With respect to handling, there is nothing in this that there is trucks coming from out of state or petrol or gas coming from out of state or goods or materials coming from out of state for purposes of the handling clause. And I think it's very important, as I say that, to note that our friends on the other side have now apparently abandoned individual coverage, the individual coverage trigger for the FLSA, and they have abandoned normal enterprise coverage for the FLSA. All they're saying is that they get in under the fine in the complaint some sort of evidence, or not evidence, but an allegation that something came from out of state. And the only one I can find that's even close is at paragraph 55 of their complaint that's ROA 82, and they say plaintiffs and other defendants' employees handled goods or materials that have been moved or produced for commerce, including by driving heavy trucks and fueling those vehicles. That is not a sufficient allegation of interstate commerce to trigger the FLSA. Excuse me. What's your best case that says that? Sabrinio. Sabrinio is my best case. I understand that's about individual coverage, but my point there is that's a pleading standard case. That's saying, look, if you just say there's a truck involved or there's gas involved or, I mean, Sabrinio is actually a very interesting case in the sense that it's about a hotel. A hotel is almost a paradigmatic thing of interstate commerce. It brings people out of state to come and be treated at the Houston Medical Center. And that, sorry, and that was not found to trigger interstate commerce. And similarly here, I do not think that simply saying trucks and gas triggers interstate commerce under the First Amendment complaint. Now let me turn to the RICO situation. The Supreme Court has been very clear that RICO requires a direct link between the predicate acts of the RICO violation and the damages that the plaintiff suffered. There is no such direct link here as Judge Haynes suggested. And I think maybe Chief Judge Owen might've suggested. And the way I would illustrate that is by reading the very first paragraph of their complaint, which says they, we, my clients entered into this scheme to bring foreign workers in under the guest room program at the lowest wage possible, well below the local prevailing wage, which defendants would have had to pay if defendants had accurately described the work. But that is not so. The defendants would not have paid the prevailing wage of $20 an hour to these plaintiffs had there been no alleged visa fraud. They would have paid $0 to these plaintiffs because as the complaint makes clear, these plaintiffs would have not gotten H-2B visas to come into the United States if we had not committed visa fraud. And we can also see that allegedly committed visa fraud. I want to be clear, I'm not conceding anything with respect to the merits. You can also see that from my friends on the other side, damages calculation. What is their damages calculation? They say they should get the delta, the difference between $20 an hour and $13.72 an hour, or maybe less than $13.72, depending on whether you believe we even underpaid that amount. But that has a big logical flaw in it because no one would have gotten $20 an hour if the fraud had not been committed. They would have gotten $0 an hour. And I don't say this to defend what my clients have allegedly done. I'm not trying to put a good face on it. If the allegations are true, they are bad acts. But that makes the plaintiffs, in a perverse sense, the beneficiaries of that fraud. They would have gotten $0. Instead, they were paid something. And that is not direct proximate cause for the purposes of RICO. I think we can see that in ANZA. We can see that in Holmes. We can see that in mentioned, but I don't think we had a lot of argument about it. Heming Group is very clear that foreseeability is not the standard. I understand that in normal common law, proximate cause. Foreseeability is one of the touchstones of proximate cause. I litigate a lot of cases on the defense side and personal injury. We talk about proximate cause and foreseeability all the time. And I understand that. But this is RICO. The Supreme Court has very clear that foreseeability is not the touchstone there. That's what Heming Group says. That's what ANZA says. So I don't think you can rely on foreseeability. It is unnecessary. Certainly, if the harms were not even foreseeable, there would be no RICO claim. But it is only a necessary but not sufficient basis for direct proximate cause. Judge Haynes, you said something about how the fact that the H-2B fraud was committed did not actually lead directly to the underpayment. There was another set of decisions, which was to underpay these immigrants. That's exactly right. That's what ANZA says. ANZA says that if there's a set of actions occurring later, that breaks the chain of proximate cause. And that's exactly what happened here. The H-2B- they made the representation what their intent was, it could have been a lie all the way through, or it could have been a later-derived lie, like, now we don't have very much money, let's cut the pay for our employees, both H-2B immigrants and American citizens. I think that's right, Your Honor. I don't think that makes any difference to the proximate cause analysis, but I think that's true as a matter of fact. One other issue I want to touch on on the RICO analysis is this, are there other defendants that you- excuse me, plaintiffs that could sue? And clearly, in this case, there are. First of all, the United States is harmed directly by this and could bring a RICO suit. There's tax revenue that's lost, and I'm sure the United States could put together other causes of action. And then we look at the complaint itself, and the plaintiffs are very clear that it hurts the competitors of Blackmagic, and that is a direct harm. If a competitor of Blackmagic is being undercut on their wage cost because Blackmagic is committing visa fraud, that is a direct proximate cause claim and might be able to be brought under RICO. So that's certainly a much more direct point. Then we can look at other immigrants to the United States, other people who want H-2B visas. You know, this is a limited bucket of visas, and these days it's even harder to get these visas, as I understand it. These people are taking away H-2B visas from other people who deserve them and who do get them. So that's another set of plaintiffs. And then, of course, American workers, which is exactly who this program is meant to defend and protect, those people could bring claims. Let's say there was a set of particular American workers in this area who had their ability to drive heavy trucks taken away by the fact that labor was being brought in from South America or from Mexico at less than proper wages. They, too, might be able to have a RICO claim. And those are all direct claims in a way that this isn't. Stepping back just a little bit, I do want to make the point that we don't want to turn RICO into a supercharged FLSA. We all know that RICO is an extraordinary statute. It unleashes treble damages, attorney's fees. It's extremely difficult to deal with. So if they have FLSA claims, they should bring those. If they have breach of contract claims in state court, which they might here, they should bring those. But I don't think that we should turn RICO into a substitute for the FLSA. The case I sent you from the Sixth Circuit on Thursday says that expressly. I know that's not presented here. I wasn't trying to assert that you can dismiss on that ground here because I at least wasn't able to make that argument because it hadn't been brought up in the district court. But it is an important point that I think one ought to keep in mind when doing the turn next to the rest of the FLSA argument. So I've already said that I don't think they get there on the handling clause because they haven't. There's not a single sentence in this complaint that says anything about any item coming from out of state. Well, but it is almost unbelievable that you can have all these trucks, all this gas and all this other stuff and not a whiff of it came from across the border there in Oklahoma. So again, we're at it. We're at an early phase. I agree you get to trial. Maybe it's not enough to just say I drove a truck. But at this stage when they haven't had full discovery and so on and so forth, what else would you expect them to say? And why isn't that enough to at least plausibly infer while we need more evidence by trial, plausibly infer that these are interstate items? Your Honor, I'm not saying it's a high test. I understand your skepticism about the argument about the limits of that argument, but it is something. If you read it the way our friends on the other side want to read it, I think you'll read the handling clause entirely out of the FLSA coverage. And I don't think that's what this court ought to do or what the law is. And so I think they tried to do more of it in the second amended complaint. They put in VIN numbers. I mean, you could have somebody who has a huge garden is selling tomatoes and manages to sell $500,000 worth of tomatoes out of their garden by handing off to people that come up. And maybe that's a case where you don't have any interstate commerce. OK, but here, trucks and gas and et cetera, it just seems highly unlikely, not just not plausible or whatever, but highly unlikely that all of that was created in Texas and not a whiff from anywhere else, since we know, for example, that vehicles, even the ones that are supposedly American vehicles like Cadillacs are made in other countries. And then Japanese vehicles like Toyotas are made in the US. And I mean, so we know that. And so I guess, again, if we're just looking at a very limited, low level scale of plausibility, why is that not plausible? I guess the best way I can push back on that is by citing Sobrino and Antigone. And I understand, again, those are individual coverage cases. There's not exactly the same. But Sobrino says the person there alleged they were working at a hotel and they were driving a truck and they were driving people around Houston. Those all would be exactly as true under your honor's argument or statement. Of course, it's quite implausible that that truck was entirely made in Texas. It's quite implausible that all the fuel came from Texas. It's implausible that all the guests at the hotel that were brought in to Houston came from Texas. I'm sure some were, but some probably were from out of state. And I think that if that were the rule, Sobrino has to come out the other way. And so does Hennigan, which is the case about the, I think it's the person at prison who's running sort of a barbecue operation or something like that. But isn't the individual focused on the individual as opposed to the handling and the enterprise? Yes, your honor. Absolutely. That one is an individual claim, but I think it's the same pleading problem. If that was enough here to say that we have a truck, then it ought to have been enough for individual coverage in Sobrino because it's this exact same test. Are you here? Are you handling goods and materials that have moved to interstate commerce? And there, do you participate in interstate commerce sort of more broadly? And the court said, no, with respect to Sobrino. Maybe that's a surprising result. It certainly was surprising to me when I first read it, but that is what this court said. It's, you know, by the rule of orderliness, we're all bound by that. And so I... Well, bound by what it addressed, which is the individual. So unless it made a much more generic review, which I did not see, it doesn't govern this notion that handling an item used in interstate commerce is not enterprise. I agree with that. What I would say it does cover is the level of plausibility required to plead interstate commerce in an FLSA coverage argument. That's what I think it covers. Yes, it's about the individual part of it and not the enterprise coverage trigger, but I think it's about the pleading standard. And that is, I understand your honor, you know, may not agree with that ultimately, but that is, you know, the best case in the circuit. And there really are not that many cases about FLSA coverage prong anywhere, much less here. You want to address the amount question? Because to me, this is your argument about the pleading of the amount is really kind of inconsistent with the Tyson Foods case from the Supreme Court, which while it was about something slightly different, makes the point that you don't have to know every second, as long as you, again, plausibly allege what happened. And they said there were these weeks that we worked 50 to 85 hours, did not get paid overtime. There were weeks we didn't get paid anything. Why is that not enough? Again, at a pleading stage where you don't have to have every day? Your honor, on that one, I agree. I have the hardest uphill climb on that claim because they've done certainly more than some of these cases that hold that there's enough to reach the pleading standard. But nonetheless, I think that they've failed the standard. And the way I was trying to articulate in my head, at least, is that on the defense side, as a defendant, you would want to be able to know how much you might be liable for when this kind of claim is filed. So the plaintiff ought to be able to allege, look, I worked this many hours. You told me you were going to pay me this much. Oh, come on. I mean, you get sued all the time and don't know exactly how much is in question. And that's why you get interrogatories and you ask, what are you seeking? And you do discovery. I mean, if you got sued in a car wreck and said, I was injured in a car wreck, you wouldn't know whether I'm claiming hundreds of thousands or 5,000. I mean, in federal court, I might've had to say it for diversity jurisdiction, but just in general. So that's why there is discovery that the complaint or the petition does not give you everything you need. So, I mean, that seems a bit much that you have to know every detail from a complaint would completely obliterate the need for discovery. And how do you get discovery until you fall suit? I don't think they need to do every detail, but I think they need to do more than they've got here. So I think they need to say how many hours they worked exactly, or at least close to an And here the allegations are pretty broad. I mean, they say we're, you know, we work between 40 and 60 hours. They can't say we worked 50 or 55, you know, whatever it is, they don't say exactly how many dollars they were supposed to be paid, but weren't paid. And how do you explain Tyson Foods? I mean, they said there, you know, you as the worker may not have every second, the employer has to keep track of this kind of thing. And we're not going to let you out of that. Like I said, Your Honor, I think it, I don't have, that's not my strongest argument. I'm not going to say that I can win on that one alone necessarily. I think it, this court could take the opportunity to say what they need to do in these kinds of cases to get through the plausibility standard. And I think it ought to be a little higher than this. But again, I don't have a case other than the district court cases that I've cited in my brief that says that directly. So I, you know, I can't really fight with Tyson Foods on that in that respect. But I do think that just like the district judge said, there were things that were omitted that could have been put in here and made the claim more plausible. If I could spend the last two minutes of my time talking about the amended complaint, which I think we haven't gotten to before, I think the district judge was well within his discretion to deny amending the complaint here. And there's a couple reasons for that. First, they waited until the case had been dismissed in order to seek leave to read. That, and they waited five weeks after the case had been dismissed if I've got the dates right. So I think that brings it well within the district court's discretion, especially because of the prejudice to my clients. At that point, we've won the case effectively. There is no final judgment yet because it's a, it's a quirk of this case that black magic had been stayed. And so the judge couldn't issue final judgment yet, but basically we had won the case. And what the plaintiffs said that we're asking for was to revive the case all of a sudden, five weeks after the, essentially the judgment. So I think that puts us well within the district court's discretion. On top of that, the plaintiffs did not ask for leave to replead in their opposition to the motion to dismiss. They have a single line that says, please give us leave to replead. But we all know that the best practice there, if you can, is to attach an amended complaint. And if you can't do that, then you should explain what you would plead that would make your complaint better. But they put their, all their eggs in the basket of fighting on the merits. That's a perfectly good decision. You know, it's one I've made many times that I'm not castigating them for that. But the point is that when you make that decision, the district judge now has authority to dismiss the claims and not grant you leave to repeat. With that, your honors, I would just urge you to affirm the judgment below, especially with respect to Rico, but also with respect to the FLSA on the Commerce Clause claim. Thank you very much. I want to address some of Mr. Malkonian's points. Turning to the Handling Clause and the repeated mention of Sobrino and Hennigan in support of his position, that the plaintiffs in this case needed to plead facts showing similar things to the Sobrino and Hennigan case. Those cases are totally different. The pleading standard would be different. And Sobrino, for example, involved a case where they had already determined at the district court that they didn't meet the business volume sales of $500,000. So the only issue was whether he himself was personally engaged in commerce. They didn't address whether driving trucks would be handling because they never addressed handling in those cases. They're not appropriate cases. And the reason why Mr. Malkonian can't find cases that talk about that, that say that we needed to be more specific is because there aren't any. The cases that deal with the Handling Clause say that it's very broad. It encompasses nearly any enterprise that meets the requisite volume of $500,000. And we have cited those cases in our brief, I believe, at page 35. With respect, so I don't think you can use Sobrino or Hennigan or any of the cases that have been cited for this position. And as was helpfully pointed out, we did allege at ROA 55 that by driving and fueling trucks that had moved in interstate commerce, that was part of our allegation as well. Turning to proximate cause. So turning actually second part of FLSA is the sufficiency of the allegations. Yes, the Supreme Court in the Tyson case cautioned against making, pleading and impossible hurdle, particularly when most of the information regarding the hours, the specific information that you would need to make a calculation are all in the custody and control of the employers. They are required to keep those records under the law. I would also point out that our allegations include that they didn't do it. ROA, sorry, we have alleged at ROA 85 that they didn't keep the records as required by the law. So, which was another issue in the Tyson case. If they haven't kept the records, then that's another question about how you establish proof. You certainly shouldn't have to do it at the pleading stage before there's any opportunity to exchange information. Turning back to proximate cause under RICO, Mr. McConaughey. Actually on the FLSA, I mean, if I say I came in at eight o'clock and stayed till nine o'clock at night, who's going to believe that? But if I punched in and punched out, the employer would have that record. I wouldn't have it. So that's the problem. I mean, yes, I should be keeping track of my time, but that's not the same thing as the employer keeping track, which then is much more solid evidence. So I do think that supports the Tyson Foods point. Yes, exactly. And all we have to do is make enough for the defendants to be put on notice that there are violations. This isn't a case where the allegations are they worked on average 37 hours. It doesn't allege overtime violation, if you say that. In this case, the plaintiffs worked more than 40 hours in every work week and were never paid one and one half times an overtime rate. And in multiple work weeks, they were not paid at all. And that should be sufficient. Also, one of the cases that were cited in the employer's brief is Johnson versus Heckman. It was cited for the proposition that they need to demonstrate how much was due. But Johnson versus Heckman was a case decided on summary judgment. And they had established by preponderance of the evidence. Time has expired. We thank you for your arguments. Thank you. Mr. Melconian, we appreciate your taking this case pro se as a court-appointed counsel. Very much. Thank you. That will be, we'll take this case under submission and the court will take a 10 minute recess.